Curia, per
Join; so J.
It is conceded that the defendant in respect to thin case stands in the relation of a common carrier, and the universal!r received doctrine of the *224 common law is that be is liable for all losses on goods committed to his care, for transportation, except such as arise- from the act of God or public enemies. To the former of these are referable all losses arising from causes over which the carrier had no eontroul, and against which no human skill or prudence could guard. Losses arising from all other causes are imputed to the carriers negligence. This is the general doctrine, but it is obvious that on enquiring into the causes from which a loss has resulted, to enable us to refer it to its proper class, regard must be had to the nature of the employment, and the thing to be transported. The carrier by water is exposed to a variety of accidents from which the carrier by-land is exempt Storms, and tempests beset him, shoals and quicksands obstruct his trackless path, and numberless other causes of destruction lie hid.from human observation. And so with respect to the thing to be transported. It may be very indestructable, or so destructable as to be liable to self decay. And rigid and inflexible as is the rule with re.spect to the liability of common carriers losses from causes derivable from the nature of the thing itself, are referred to the act of God. They are regarded as inevitable.
There is a distinction then between losses arising from extrinsic causes and intrinsic causes attributable to the nature of the thing itself; and Í apprehend that upon examination it will be found that the same distinction exists between moral and physical causes.
Admitting the rule to the whole extent contended for, let us take the case under consideration for an illustration. The plaintiff employed the defendant to carry a negro woman slave and her child on board his steam boat from Charleston to Georgetown, by virtue of which undertaking he was liable, if they were lost from any other cause'than inevitable accident. Let it be recollected that this rvo- *225 .'man is a human being, and possesses reason. Can the carrier restrain or control the operation of her mind ?— She wills her own destruction or escape, can he prevent it? She possesses the power of locomotion, shall he bind her in fetters or confine her in the hold of the vessel ? This would prevent her escape, but it is unusual, and would expose her to greater danger in case of wreck or other accident, which might be imputed to him as. negli- . gence. Here then is a class of cases over which the carrier possesses no more controul than he does over those which are attributable to the act of God. The operation of moral as well as natural causes, are equally beyond the reach of physical power, and must alike be referred to that class of accidents which are denominated inevitable.
There is then a radical distinction between the liability of a carrier with respect to the transportation of a slave and a bale of goods. The latter has neither the power ofvo-litionn or of motion, and is completely under his - controul. The former is operated upon by moral causes, the latter -only by physical, and of necessity this distinction must be kept in view in the application of the rule. But it is said that the rule is one of rigid policy founded on the supposed difficulty the owner must encounter in ascertaining the truth as to the manner in which the goods were lost, and the facility possessed by a carrier of combining with thieves to purloin them, and that these reasons apply with equal force to the subject nowin controversy as a bale of goods. Whilst I am constrained to bend to the general rule of law, I must acknowledge that I have never been able to discover the good sense of the reasoning on which it is founded. The contract to carry imposes the obligation on the carrier to deliver the goods, and if he does not it is incumbent on him to show some reason or excuse why he has not done so. The onus is thus throwtó *226 on him, and if be is competent to show to demonstration that the loss occurred without his fault, as that he had been beset with an overwhelming force, and'been’robbed without covin or fraud, my powers of reasoning are unable'to distinguish between the justness’of süch ah excuse and one arising from inevitable’accident, or thát all1 the dangers apprehended from Unfairness might’not be sufficiently guarded against by the strictness of tbie proof.— But it is sufficient for the purposes’of this case that causes may exist which will excuse the carrier,' and of which he may be permitted to give evidence. The act of God, or the public enemy.
Again. It is said that the danger of combination to inveigle or purloin, is incurred by the circumstance’that a slave has the power of reasoning and of locomotion; but it must be recollected that these same faculties include a still greater counteracting influence. The moral and physical influence of which it is capable, as well as the probability of exposure and detection, greatly ought Weigh’any danger from that source.
I have looked in vain fox- cases bearing an analogy to the question made hei-e, and in the’absence of any I liáve had recourse to principles which bppear to toe unexceptionable, and have exercised the best’ of toy judgment in deducing a conclusion from them, and the result4s a conviction that inthe foregoing particulars, and perhaps many others, a distinction exists between the liability of a common carrier with respect to the subject mattér of this suit and goods generally.
The cases of Rutherford vs. M‘Gowen, 1 Nott and M‘Cord 17. Cook v Gourdin, 2 Nott and M'Cord 19, and Miles vs. Johnson, 1 M'Cord 157, which are supposed to bear an analogy to the question nowundfer consideration, will be found upon examination not to touch the pfin-ciple. These were all actions against the owners offer- *227 lies lor the loss of horses in their transportation across rivers in which the court lays down the rule generally, that their liability is placed on the same footing with respect to that description of property as it is in regard to things inanimate; yet in all of them it will be seen there were circumstances of negligence. In the case of Rutherford vs. M'Gowen the loss arose from the insuffieiency of the chain which confined the boat to the shore. In Cook vs. Gourdin, the attempt to pass the .river was at high water and the crew abandoned their poles and oars. And so in the case of Miller vs. Johnson the utter recklessness of the man who had charge oí the ferry, and the difficulty in entering into the boat in consequence of the want of the necessary conveniences and preparations are thrown into the scale of the principle on which the court proceeds, and I think it is yet to be settled how far a ferry owner is liable, when he is entirely faultless. Admitting the rule however as laid down in those cases there is still a glaring distinction arising out of the difference in the character of the two species of property. The want of volition in the one subjects it more immediately to the controul of man, whilst the rod oí omnipotence alone can impose a check on the operation of the human mind or controul its action.
This case comes up on a report drawn up by the counsel unaccompanied by the particular circumstances and unexplained by the particular views of the presiding judge, except as to the abstract question which has been submitted, and I have found great difficulty in applying the principles to it. If the case had been put to thejury on the question whether in fact the loss occurred by the negligence of the defendant, or the act of the slave herself or from unavoidable accident, proceeding on the practice of the court, the verdict would have been regarded as conclusive, although the judge had erred in a specula- *228 ii'on on an abstract question of law. But it is possible that the jury may have been misled by it and for that reason a new trial is ordered that the facts may be again investigated with reference to the principles laid down.
Golcock, J. dissented.

New Trial Granted.